IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ASHLEY B. BRYANT                                                                          PLAINTIFF

v.                                             NO.:  4:08-CV-00449-BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                              DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff Ashley B. Bryant has appealed the final decision of the Commissioner of

the Social Security Administration (the "Commissioner") denying her claim for

Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security

Act.  For the reasons that follow, the decision of the Administrative Law Judge ("ALJ")[1]

is affirmed.

I.       Procedural History:

Plaintiff filed an application for SSI benefits on November 2, 2005.  In the

application, Plaintiff alleges she is disabled as a result of learning disabilities, back injury,

and kidney problems.[2]  (Tr. 61)

The ALJ held a hearing on August 23, 2007, and Plaintiff appeared with Shirley

Sutter, a non-attorney representative.  The ALJ received testimony from Vocational

Expert ("VE") Ken Waits and Plaintiff, and also heard testimony from Plaintiff's

---

[1] The Honorable Troy M. Patterson, Administrative Law Judge.

[2] Although the claimant alleged an earlier disability date of July 28, 1983, SSI
benefits do not become payable until the month after the month in which the application
is filed.  20 C.F.R. § 416.335.  Therefore, the issue is whether the claimant was disabled
from November 2, 2005, to September 27, 2007 (the date of the ALJ's decision).

husband, Bobby Bryant, and Plaintiff's mother-in-law, Debra Bryant.  On September 27, 2007, the ALJ issued a decision denying Plaintiff benefits.  (Tr. 31-38)  Plaintiff filed the current Complaint for Review of Decision (docket entry #2) on May 27, 2008.

## II.   Background:

At the time of the hearing, Plaintiff was a 24-year-old female with a twelfth-grade education.  She had no past relevant work experience for purposes of the Social Security Administration,[3] but Plaintiff testified that she had worked in the past as a janitor, photo studio manager, and substitute teacher.  (Tr. 334)  Plaintiff was 5 feet 5 inches tall and weighed 186 pounds.  She had two minor children, ages 3 and 1.  Plaintiff testified that she takes care of her two children, cooks, drives, shops, and goes to church every week. (Tr. 339-340)

Plaintiff's early school records reflect a diagnosis of borderline intellectual functioning and learning disability, especially with respect to reading.  She was placed in resource classes from grades 4-12.  (Tr. 190-207)

Plaintiff claims she has suffered chronic pain in her back, neck, and shoulders, as well as frequent kidney infections, since being involved in a motor vehicle accident in 1997.  (Tr. 119)  Plaintiff claims that she has been administered painkilling injections during emergency room visits to relieve her back pain, and that doctors have prescribed other medications for that purpose.  (Tr. 149)  Plaintiff has provided no medical records to substantiate these claims.

---

[3] Plaintiff did not perform any of her past work at the level of substantial gainful activity.  (Tr. 35)  Accordingly, her past work did not qualify as "past relevant work." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009).

Plaintiff's medical records show that, from October 24, 2005 to May 25, 2006, she had periodic prenatal evaluations and sought treatment for a spider bite on January 19, 2006.  (Tr. 235-238, 234)

On January 23, 2006, Plaintiff underwent a general medical examination at the request of the Social Security Administration ("SSA").  (Tr. 267-273)  The examiner concluded that Plaintiff's physical impairments resulted in a "mild limitation" in lifting, carrying, and squatting. (Tr. 273)

On July 12, 2006, Dr. Kenneth Hobby evaluated Plaintiff's mental status and adaptive functioning on behalf of the SSA.  (Tr. 247-262)  Based on the results of the examination, Dr. Hobby concluded that the most likely area of difficulty for the Plaintiff in a workplace setting would be "her reported physical problems," adding that the Plaintiff "would probably respond adequately to work pressure in a work setting if she could physically and academically do the work."  (Tr. 262)

On August 11, 2006, Dr. Daniel K. Pace conducted a magnetic resonance imaging (MRI) of Plaintiff's lumbar spine in response to her complaints of back pain and leg numbness.  (Tr. 188)  The MRI revealed minimal disk bulges in the L4-L5 and L5-S1 regions.  (Tr. 188)  Dr. Pace assessed the MRI results as comprising the "minimal changes of spondylosis [spinal osteoarthritis]."  (Tr. 188)

On July 24, 2007, Dr. Pace conducted a physical examination of Plaintiff, who complained of chronic back pain and pelvic pain.  (Tr.  315)  Dr. Pace diagnosed Plaintiff with persistent lower back pain with spondylosis, and referred her to a neurologist for further evaluation.  (Tr. 316)  In addition, Dr. Pace diagnosed Plaintiff with chronic pelvic

pain due to suspected endometriosis, and referred her back to her regular physician for further evaluation.  (Tr. 316)  Dr. Pace prescribed no medications for pain. (Tr. 316)

### III.   Findings of the ALJ:

The ALJ followed the required five-step sequential analysis set out in 20 C.F.R. § 416.920(a)(4), finding: (1) that Plaintiff had not engaged in substantial gainful activity at any time, including since the onset of her alleged disability; (2) that she suffered from a severe impairment as that term is interpreted for purposes of the Social Security Regulations; (3) that Plaintiff did not have an impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404 ( "Appendix 1"); (4) that she did not have any past relevant work; but (5) that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light, unskilled work[4].  At step five, the ALJ found that a significant number of jobs existed in the economy which Plaintiff was capable of performing.

Plaintiff contends that the ALJ's findings are not supported by substantial evidence and contain errors of law because the ALJ erred: (1) in finding that Plaintiff's impairments did not meet the level of severity of any impairment listed in Appendix 1; and (2) in assessing Plaintiff's RFC.

The Defendant argues that the ALJ's decision is supported by substantial evidence because the ALJ properly determined: (1) that Plaintiff's impairments did not meet or equal the level of severity of any listing in Appendix 1; (2) Plaintiff's RFC; (3) that

---

[4] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

Plaintiff was not totally credible; and (4) that Plaintiff was not disabled under step five of

20 C.F.R. § 416.920(a)(4).

## IV.   Legal Analysis:

In reviewing the ALJ's decision, this Court must determine whether there is

substantial evidence in the administrative record to support the decision.  42 U.S.C.

§ 405(g).  This review function is limited, and the decision of the ALJ must be affirmed

"if the record contains substantial evidence to support it."  *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003).

"Substantial evidence is less than a preponderance but enough so that a reasonable

mind could find it adequate to support the decision."  *Id*.  Evidence that both supports and

detracts from the ALJ's decision must be considered, but the decision cannot be reversed

"merely because there exists substantial evidence supporting a different outcome."  *Id*.

"Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions

from the evidence and one of those positions represents the [ALJ's] findings, we must

affirm the decision of the [ALJ]."  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)

(citations and quotations omitted).  Thus, the Court's function on review is to determine

whether the Commissioner's decision is supported by substantial evidence on the record

as a whole and whether it is based on legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th

Cir. 1997).

### A.   Severity of Plaintiff's Impairments:

Plaintiff contends that the ALJ erred in finding that her impairments did not meet

the level of severity of any impairment listed in Appendix 1.  Defendant disagrees,

arguing that the ALJ correctly determined that Plaintiff's impairments did not meet or

equal any such level of severity.  Plaintiff has the burden to prove that her impairments

met or equaled a listing.  *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)

(citing *Zebley v. Sullivan*, 493 U.S. 521, 530-531 (1990)).  To meet a listing, the

impairment must meet all of the specified criteria in the listing.  *Id.* at 1070.  Likewise, in

order to equal a listing, Plaintiff must present medical findings equal in severity to all the

criteria of the listed impairment.  *Marciniak v. Shalala*, 49 F.3d 1350, 1351 (8th Cir.

1995); *Zebley*, 493 U.S. at 530 (an impairment does not meet or equal a listing if it has

only some of the medical criteria, no matter how severe).

Plaintiff argues that her impairments met or equaled the criteria in Listing 1.02 of

Appendix 1, which describes symptoms relating to the major dysfunction of a joint

involving either: (A) one hip, knee, or ankle; or (B) both shoulders, elbows, wrists, or

hands.  It appears that Plaintiff cites this listing in reference to her alleged knee, hip, and

shoulder pain to which she testified at the hearing.  (Tr. 332)  Plaintiff, her husband, and

her mother-in-law have all testified that in the months leading up to the hearing,

Plaintiff's legs had "gone numb" without warning, causing her to fall.  (Tr. 332, 336, 338)

The ALJ sent Plaintiff for a physical consultation well over a year and a half before the

hearing.  (Tr. 267-273)  The examination showed no indication of inadequate functioning

of the hips, knees, ankles, shoulders, elbows, wrists, or hands.  (Tr. 270)  Dr. Pace

conducted a physical examination of Plaintiff July 24, 2007, one month before the

hearing, and did not note any major joint dysfunction.  (Tr. 315-316)  The complete

absence of medical evidence supporting Plaintiff's subjective complaints is a factor that

supports the discounting of such complaints.  *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

Neither Plaintiff nor her representative requested that the ALJ send Plaintiff for a follow-up consultation to provide evidence of her condition.  Plaintiff had the burden to make sure the record contained at least some objective evidence to suggest a reasonable possibility that a severe impairment existed.  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citations omitted).  Since the record contains no objective evidence of any impairment to the joints cited in Listing 1.02 of Appendix 1, the ALJ was correct in finding Plaintiff did not satisfy her burden of proving the severity of impairment described in the listing.

Plaintiff argues that her back impairment met or equaled the level of severity described in Listing 1.04 of Appendix 1, which describes disorders of the spine resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  On August 11, 2006, Dr. Daniel Pace evaluated an MRI of Plaintiff's lumbar spine.  (Tr. 188)  The results of the MRI showed a "[m]inimal disk bulge . . . [v]ery minimal left posterior herniation of disk causing minimal indentation on left neural foramen" with respect to the L4-L5 disk.  (Tr. 188)  As for the L5-S1 disk, the MRI showed a "[d]isk bulge . . . minimal left posterior herniation of bulging disk causes minimal indentation on left neural foramen."  (Tr. 188)  The MRI report also mentioned "[m]inimal changes of spondylosis."  (Tr. 188)  The bulges noted in the MRI showed only a minimal indentation on the neural foramina, and therefore provided no evidence of compromise of a nerve root (including the cauda equina) or the spinal cord has occurred.  See *Woolf v. Shalala*, 3 F.3d

1210, 1213 (8th Cir. 1993) (degenerative disk disease with mild posterior bulging not a

disabling condition).  Since the record contains no objective evidence of any impairment

to the spine rising to the level of severity cited in Listing 1.04 of Appendix 1, the ALJ

was correct in finding Plaintiff did not satisfy her burden of establishing that this

impairment met or equaled the level of  severity described in the listing.

### B.        Plaintiff's Residual Functional Capacity:

The ALJ bears the initial responsibility for assessing Plaintiff's RFC.  *Anderson v.*

*Shalala*, 51 F.3d 777,779 (8th Cir. 1995).  Plaintiff's RFC is what she can do despite her

limitations.  20 C.F.R. § 416.945 (2003).  In determining Plaintiff's RFC, the ALJ has a

duty to establish, by competent medical evidence, the physical and mental activity that

Plaintiff can perform in a work setting, after giving appropriate consideration to all of her

impairments.  *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).  The ALJ must

determine the Plaintiff's RFC based on all relevant evidence, including medical records,

observations of treating physicians and others, and Plaintiff's own descriptions of her

limitations.  *Baldwin v. Barnhart*, 349 F.3d 549, 566 (8th Cir. 2003); *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ determined that Plaintiff maintained the RFC to perform a full range of

light, unskilled work.  (Tr. 35) He estimated that Plaintiff retained the ability to perform

light work involving lifting no more than twenty pounds at a time with frequent lifting or

carrying of objects weighing up to ten pounds.  (Tr. 35)  The ALJ determined that,

mentally, Plaintiff was limited to unskilled work where interpersonal contact is routine

but superficial, complexity of tasks is learned by rote with few variables and little

judgment required, and where supervision required is little for routine but detailed for non-routine tasks.  (Tr. 35)

### 1.      Physical Residual Functional Capacity:

The record contains substantial evidence to support the ALJ's physical RFC determination.  During Plaintiff's general physical consultation on January 23, 2006, the doctor found no limitations in Plaintiff's range of motion or limb functioning.  (Tr. 270-271)  The doctor found no limitations in Plaintiff's neurological or orthopedic functioning.  (Tr. 270-271)  The only limitation noted by the doctor was that walking over spans of more than 50 feet would produce "exercise-limiting dyspnea [shortness of breath]."  (Tr. 268)  Accordingly, the ALJ properly determined Plaintiff could physically perform a full range of light work.

### 2.      Mental Residual Functional Capacity:

The record shows, and the ALJ found, that Plaintiff had some mild limitations in her mental functioning.  On July 12, 2006, Dr. Hobby evaluated Plaintiff's mental status and adaptive functioning.  (Tr. 247-262)  Plaintiff scored a verbal IQ of 82, a performance IQ of 83, and a full-scale IQ of 77.  (Tr. 257)  Dr. Hobby considered the test results to be valid, with no evidence of exaggeration or malingering, or any attempt to manipulate the test results.  (Tr. 254)  Dr. Hobby estimated that Plaintiff's level of intellectual functioning was in the low average to borderline range.  (Tr. 258)

Based on the results of the examination, Dr. Hobby assigned Plaintiff a current Global Assessment of Functioning (GAF) score of 60, adding that she had a GAF score of

65 over the past year.[5]  (Tr. 253)  Dr. Hobby estimated that the most likely area of

difficulty for the Plaintiff in a workplace setting would be "her reported physical

problems."  (Tr. 262)  Dr. Hobby concluded that Plaintiff has the ability to understand,

carry out, and remember instructions, as well as, a good capacity to respond appropriately

to supervision and coworkers.  (Tr. 262)  Accordingly, the ALJ properly determined

Plaintiff was capable of performing a full range of unskilled work.  (Tr. 34)

### C.      The ALJ's Credibility Determination:

Under 20 C.F.R. § 416.929, the ALJ must consider all symptoms, including pain,

and the extent to which these symptoms are consistent with the objective medical

evidence.  The ALJ is in the best position to gauge the credibility of testimony, and those

credibility determinations are entitled to some deference.  *Estes v. Barnhart*, 275 F.3d

722, 724 (8th Cir. 2002).  An ALJ's conclusions may be upheld if the record as a whole

supports it.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

The objective medical findings contained in the records do not support Plaintiff's

allegations of disabling impairments.  Plaintiff argues that the August 11, 2006, MRI

results are indicative of a disabling spine condition.  The medical examination of January

23, 2006, however, revealed no orthopedic or range of motion limitations.  Focal disc

herniation with moderate restriction of motion in back contradicts complaints of disabling

pain.  *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997).

---

[5] The Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV),
published by the American Psychiatric Association, states that a GAF of 51 to 60
indicates "moderate symptoms or moderate difficulty in social, occupational, or school
functioning" (DSM-IV 32).  A GAF of 61 to 70 indicates "some difficulty in social,
occupational, or school functioning, but generally functioning pretty well" (DSM-IV 32).

Plaintiff alleged chronic back, knee, shoulder, and hip problems.  Plaintiff

underwent a thorough medical examination on January 23, 2006, which showed no

abnormality in Plaintiff's neurological, orthopedic, limb, or range of motion functioning.

(Tr. 270-271)  The absence of medical evidence supporting a claimant's subjective

complaints is a factor that supports the discounting of such complaints.  *Kisling v. Chater*,

105 F.3d 1255, 1257 (8th Cir. 1997).  Furthermore, the evidence in the record showed

that Plaintiff took only over-the-counter Tylenol to relieve her pain.  A lack of

prescription pain medication contradicts claimant's allegation of disability.  *Wilson v.*

*Chater*, 76 F.3d 238, 241 (8th Cir. 1996).

The ALJ was required to consider the testimony of non-medical sources and third

parties with regard to how Plaintiff's impairments affected her ability to work.  *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  To that end, the ALJ considered the

testimony of Plaintiff's mother-in-law and husband.  The ALJ found that the testimony of

those witnesses "merely corroborated the testimony of the claimant . . . and appeared to

be based on an uncritical acceptance of her complaints and a desire to see the claimant

receive benefits."  (Tr. 35)  While the testimony of family members must be given

consideration, it need not be believed.  *Rautio v. Bowen*, 862 F.2d 130 (8th Cir. 1998).

Accordingly, the ALJ found the testimony of Plaintiff's family members was not fully

supported by other substantial evidence.

In evaluating Plaintiff's subjective complaints, the ALJ must give full

consideration to all evidence presented, including Plaintiff's prior work record, daily

activities and functional restrictions.  *Polaski*, 739 F.2d at 1322.  Plaintiff testified that

she had worked in the past as a janitor, photo studio manager, and substitute teacher. (Tr. 334) Plaintiff also testified that she could read only at a second-grade level. (Tr. 335) The ALJ determined it was unlikely that a person with only a second-grade reading level could perform the duties of a photo studio manager, which, according to Plaintiff, consisted of taking pictures, setting up props, filling out orders, and using a computer terminal to ring up transactions. (Tr. 32)

The ALJ also determined that Plaintiff's description of the severity of her impairments was inconsistent with her daily activities. Plaintiff testified that she takes care of her two children, cooks, drives, shops, and goes to church every week. (Tr. 339-340) The ALJ found that the testimony relating to Plaintiff's work experience and routine of daily activities was not consistent with that of a disabled person, but rather of a person with an advanced level of functioning.

Based on the entire record, there is substantial evidence to support the ALJ's decision to discredit, to some degree, Plaintiff's subjective complaints. That does not mean Plaintiff did not actually suffer some pain or lower intellectual functioning, but merely that the extent to which she described her limitations was not consistent with the available evidence. Accordingly, the ALJ properly determined that Plaintiff was not totally credible.

### D.   Vocational Evidence and Significant Number of Jobs in the Economy:

If a plaintiff cannot perform her past relevant work, the burden of production shifts to the Commissioner to show that a significant number of jobs exist in the economy

which the plaintiff is capable of performing.[6]   20 C.F.R. § 416.920(a)(4)(v).   In general, if

Plaintiff suffered from nonexertional impairments that limited her ability to perform a full

range of work, the ALJ would be required to utilize testimony of a VE.  *Groeper v.

Sullivan*, 932 F.2d 1234, 1235 n.1 (8th Cir. 1991).  In order for the VE's testimony to

constitute substantial evidence, it must be in response to a properly phrased hypothetical

question which accurately describes a plaintiff's limitations.  *Hunt v. Barnhart*, 250 F.3d

622, 625 (8th Cir. 2001).

The ALJ found that Plaintiff had the ability to perform light work involving lifting

no more than twenty pounds at a time, with frequent lifting or carrying of objects

weighing up to ten pounds.  (Tr. 35)  Mentally, the ALJ determined that Plaintiff was

limited to unskilled work, where interpersonal contact is routine but superficial,

complexity of tasks is learned by rote with few variables and little judgment required, and

where supervision required is little for routine but detailed for non-routine tasks.  (Tr. 35)

In response to the ALJ's hypothetical question, the VE testified that an individual

with Plaintiff's limitations could perform unskilled light and sedentary jobs in the

assembly field.[7]  (Tr. 342)  In addition, the VE testified that an individual with Plaintiff's

limitations could perform light work in the fields of inspection, testing, sorting, sampling,

and weighing.[8]  (Tr. 342-343)  While there is no bright-line rule regarding the number of

---

[6] Plaintiff did not have any past relevant work.

[7] At the time of the hearing, there were approximately 8,800 of these jobs
regionally, and 513,000 in the United States.

[8] At the time of the hearing, there were approximately 1,700 of these jobs
regionally, and 454,000 in the United States.

jobs in the economy, it appears the Commissioner comfortably met his burden in this

respect.  See *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (five hundred jobs

were a legally sufficient number to meet the Commissioner's burden).  Accordingly, the

ALJ properly determined that Plaintiff was not disabled under step five of 20 C.F.R.

§ 416.920(a)(4).

**V.      Conclusion:**

There is substantial evidence in the record to support the Commissioner's denial of

benefits to the Plaintiff.  It appears, as the ALJ recognized, that Plaintiff suffered a severe

impairment.  There is not, however, sufficient evidence to indicate that Plaintiff's

impairment met or equaled the level of severity of an impairment described in Appendix

1.  There is sufficient evidence in the record to support the ALJ's assessment that Plaintiff

retained the capacity to perform a significant number of jobs in the national economy.

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the

case, this 15th day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE